UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KELVIN D. GOODE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-387-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MS. J. TUCKER, ET AL., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\* \*\* \*\* \*\* \*\*

Kelvin D. Goode, the *pro se* plaintiff, is confined in the United States Penitentiary-Victorville ("USP-Victorville") located in Adelanto, California. Goode has filed a civil rights action asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). [R. 2.]

This matter is before the Court for initial screening. Because this is a civil action that is being pursued by a prisoner against government officers, the Court must screen the Complaint under 28 U.S.C. § 1915A. Additionally, the Court must screen the Complaint under 28 U.S.C. § 1915(e) because Goode is proceeding *in forma pauperis*. Both of these sections require the Court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. 28 U.S.C. §§ 1915(e) & 1915A.

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008). Moreover, at the screening

phase, the allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

Goode was previously confined in the United States Penitentiary-McCreary ("USP-McCreary") located in Pine Knot, Kentucky. Goode alleges that in the summer of 2008, the defendants, USP-McCreary officials, informed him that the he had a 24-point "High Security" Inmate classification, but that they instead documented his records to reflect a classification/security score of 26. He further alleges that the defendants failed to assist him in his efforts to participate in rehabilitative programs. Broadly construed, Goode is alleging that he was denied due process of law under the Fifth Amendment to the United States Constitution. To the extent that Goode challenges certain conditions of his confinement, such as his transfer to USP-Victorville, he asserts claims under the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment.

Goode does not specify what relief he seeks, but, construing the complaint broadly, he may be seeking injunctive relief in the form of a reduced classification score and/or transfer from USP-Victorville to a lower security federal prison. For the reasons set forth below, the Court will dismiss Goode's claims with prejudice for failure to state a claim upon which relief can be granted.

**I.**

Goode's original Complaint was excessively long and rambling, and violated the simple pleading requirements of Federal Rule of Civil Procedure 8(a) and (e). In his supplemental Memorandum, Goode clarified the issues he is raising. [R. 5 & 6.] The Court has constructed the following summary of the claims asserted in Goode's Complaint and supplemental filings.

2

Before Goode was transferred to USP-McCreary in April of 2008, he asked the Bureau of Prisons ("BOP") Designation and Sentence Computation Center ("DSCC") to explain why he had a high security custody status. According to the September 19, 2008 letter from the DSCC, Goode was classified as of that date as being a high security level offender with a custody score of 26 points. [*See* R. 2-2, p. 22.] The Operations Manager of the DSCC explained that Goode's score was the result of several factors: (1) his conviction for "Assaulting [sic] without Serious Injury;" (2) his poor institutional adjustment in the areas of living skills and program participation; and (3) a criminal history score of 17 points. [*Id.*]

After his arrival at USP-McCreary, Goode continued to question and object to his security classification. Goode's attachments reveal that his security classification score has varied between 24 [R. 2-2, p.7 (August 4, 2008)] and 26 [R. 2-2, p. 8, (September 8, 2008)]. In his submissions, Goode outlined the verbal and written inquiries he lodged about his security classification. He further objected to his high security classification, disclaimed the BOP's assessment that he has a history of violence, claimed that the defendants refused to assist him in participating in rehabilitative programs, and objected to the decision to transfer him to USP-Victorville, which is a high security BOP facility. [*See* Complaint, R. 2; Supplement to Complaint, R. 2-2; and Memorandum, R. 6.]

**II.**

It does not appear from the face of Goode's Complaint that he has exhausted his claims. However, it is unnecessary to consider the issue of administrative exhaustion because Goode's claims suffer from other fatal defects on the merits. *See* 42 U.S.C. § 1977e(c)(2).

From the limited exhaustion documentation which Goode has provided, it appears that on

3

August 4, 2008, Defendant R.G. McLeod, Assistant Warden of USP-McCreary, informed Goode that as a result of a May 2008 disciplinary conviction for assault (violation of BOP Code 224), he had been scored as a "24-point High Security level inmate." McLeod further informed Goode that his Custody Classification Form had been updated to reflect a minor history of violence within the past five years, and that he had been given credit for having either a high school diploma or a GED. This information was contained in a "Response to an Inmate Request to Staff" [R. 2-2, p. 7]. McLeod signed the document over the line under which Warden Stine's name was printed.

A month later, on September 8, 2008, McLeod signed, over former Warden Stine's signature line, another "Response to an Inmate Request to Staff." [R. 2-2, p. 8.] In that Response, McLeod amended his August response and clarified that Goode had actually been scored as a "26-point High Security level inmate" due to the prior oversight of an assault and battery incident from 2006, in which Goode "threatened a female with a knife, struck her, grabbed her by the throat and attempted to drag her across the floor." [*Id*.]

In his Complaint and supplemental filings, Goode disputes the accuracy of the BOP's determination that he has a history of violent behavior, claiming that the 2006 incident was only a minor domestic relations scuffle. Goode claims that based on the August 4, 2008 representation made by McLeod, his records should have reflected a security classification score of 24 instead of 26. He further claims that Defendant Tucker caused him to be transferred to a "high violence and gang affiliated level 5 prison." [R. 6, p. 2.]

Whether viewed as a claim for denial of due process under the Fifth Amendment to the United States Constitution, or as a claim challenging his conditions of confinement under the

4

Eighth Amendment, Goode fails to state a claim upon which relief can be granted. The claim lacks validity under the Fifth Amendment because Goode does not have a protected liberty interest in the procedure which determines his classification and security status. Lacking a substantive interest that procedure, Goode cannot successfully claim he has been denied due process, because "process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Congress has granted federal prison officials discretion to control the conditions of confinement of federal prisoners, and the BOP has adopted a classification procedure which is within the discretion of the Attorney General as delegated to the Director. 18 U.S.C. § 4081; 28 C.F.R. § 0.96. *See e.g.*, *Peck v. Hoff*, 660 F.2d 371 (8th Cir. 1981). As a result of that grant of authority, the BOP enjoys the right to exercise full discretion in matters relating to the incarceration and classification of lawfully convicted prisoners. *See* 18 U.S.C. § 3621; *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986).

The September 8, 2008 "Response" from McLeod explains why the BOP assigned a security classification score of 26 to Goode. Simply put, the BOP had overlooked the 2006 incident when it informed Goode a month before that he had a score of 24. Goode has not stated a due process claim as to his classification score of 26 because he has no protected liberty interest in any particular classification within BOP. *See Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (holding that a prison inmate lacks a liberty interest in his custodial classification and that his disagreement with his same is insufficient to establish a constitutional violation.); *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003) (rejecting Mader's due process claim because prisoners generally do not have a due process liberty interest in their placement and classification

5

while incarcerated); *Posey v. Dewalt*, 86 F. Supp. 2d 565, 571 (E.D. Va. 1999).

Goode's claim under the Eighth Amendment also lacks merit. Goode appears to be alleging that he had a liberty interest in not being transferred to a higher security prison, such as the one in which he is now confined, USP-Victorville. To establish the existence of a liberty interest, a prisoner must show that he has been subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *see Sandin v. Conner*, 515 U.S. 472, 484 (1995), or that the government's action "will inevitably affect the duration of his sentence." *Id*. at 487.

Goode has not alleged that the decision to classify him at a higher security level subjected him to "unnecessary and wanton infliction of pain," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), or that he has been exposed to conditions below "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). While confinement in a higher security prison is undoubtedly less desirable and more unpleasant than confinement in a lower security prison, it is neither an atypical and significant hardship in relation to the incidents of prison life, nor cruel and unusual punishment.

To the extent that Goode complains about being denied access to rehabilitative programs, or complains that Defendants Tucker, Wood, and Browder failed to assist him in that endeavor, Goode states no constitutional claim. Prisoners enjoy no constitutional right to vocational training or rehabilitative programs, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), or prison jobs, *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). *See also Murdoch v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (no protected liberty or property interest in attending rehabilitation program); *Wishon v. Gammon*,

6

978 F.2d 446, 450 (8th Cir. 1992) (no right to educational or vocational opportunities); and *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no liberty interest in inmate classification or eligibility for work programs).

To the extent Goode seeks damages from Defendants Stine and McLeod, these defendants are entitled to dismissal for another reason. It appears that these defendants' only acts were denying Goode's appeals during the administrative remedy process at the institutional level. Defendants without personal involvement or participation in allegedly unconstitutional acts must be dismissed. *Rizzo v. Goode*, 423 U.S. 362 (1976). Denial of BOP administrative complaints up the levels of appeal are insufficient to confer liability. *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999). Therefore, any claims for damages against Stine and McLeod must be dismissed for this additional reason.

### III.

Accordingly, **IT IS ORDERED** as follows:

(1) As the Court has entered an Order granting Goode pauper status [R. 9], his motion to proceed *in forma pauperis* [R. 3] is **DENIED** as **MOOT**.

(2) Goode's Fifth and Eighth Amendment constitutional claims, set forth in his Complaint [R. 2] and Memorandum [R. 6], are **DISMISSED WITH PREJUDICE**.

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This the 16th day of April, 2010.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge